**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ContentGuard Holdings, Inc., <br><br>                Plaintiff, <br><br>     -against- <br><br> Google, Inc. <br><br><br>            Defendant. | Civil Action No.  2:14-cv-61 <br><br> JURY TRIAL DEMANDED |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

ContentGuard Holdings, Inc. ("ContentGuard"), by and through its undersigned attorneys, based upon personal knowledge with respect to its own actions and on information and belief as to other matters, for its complaint avers as follows:

### <u>THE PARTIES</u>

**A.      ContentGuard**

1.      ContentGuard is a leading innovator, developer, and licensor of digital rights management ("DRM") and related digital content distribution products and technologies. ContentGuard is a corporation organized under the laws of the state of Texas with its principal place of business at 6900 N. Dallas Parkway, Suite 850, Plano, Texas, 75024.

2.      ContentGuard's long history of innovation in the DRM space began in the 1990s at Xerox Corporation's legendary Palo Alto Research Center ("Xerox PARC").  Years before Google's popular search engine was designed, Xerox PARC's brilliant scientists envisioned a

future in which people would rely on the Internet to supply the broadest array of digital content the world had ever seen.  At that time, however, no one had yet invented an effective means to prevent piracy of digital content, which could be readily copied and distributed by personal computers.  Many believed that the problem was essentially unsolvable—and that, as a consequence, the distribution of movies, videos, music, books, "apps," and other digital content over the Internet would be blocked by copyright owners and others with a vested interest in protecting such content.

3.      A well-known commentator—John Perry Barlow—summarized the "digitized property" challenge as follows: "If our property can be infinitely reproduced and instantaneously distributed all over the planet without cost, without our knowledge, without its even leaving our possession, how can we protect it?  How are we going to get paid for the work we do with our minds?  And, if we can't get paid, what will assure the continued creation and distribution of such work?  Since we don't have a solution to what is a profoundly new kind of challenge, and are apparently unable to delay the galloping digitization of everything not obstinately physical, we are sailing into the future on a sinking ship."

4.      While they fully understood the "profoundly new kind of challenge" posed by the arrival of the Internet, Xerox PARC's scientists had a different vision of the future, firmly believing that a solution to what Barlow called the "immense, unsolved conundrum . . . of digitized property" could in fact be found.  Xerox PARC's scientists thus began to explore DRM solutions that would not only prevent piracy, but would also enable musicians, authors, photographers, publishers, and producers to share, track, and control their content.  Through a series of revolutionary inventions in the 1990s, Xerox PARC's scientists laid the technological

foundation for what would ultimately become the prevailing paradigm for distributing digital content over the Internet.

5.      In 2000, Xerox Corporation partnered with Microsoft Corporation to form a new company, ContentGuard, to pursue the DRM business.  Xerox contributed key personnel, as well as all of its then-existing and future DRM-related inventions and technologies to ContentGuard. In the press release announcing the formation of ContentGuard, Steve Ballmer, Microsoft's then-President and Chief Executive Officer, hailed ContentGuard's innovations in the DRM space, noting that "the secure and safe delivery of digital media is of primary importance to not only everyone in the business of content distribution, but consumers of this information as well."  The joint Xerox and Microsoft press release announcing the formation of ContentGuard, and an advertisement produced at the time, are attached hereto as Exhibits A and B.

6.      Staffed by a team of scientists and technology veterans from Xerox and Microsoft, ContentGuard continued its path of innovation, developing both hardware and software solutions to solve the vexing problem of digital piracy.  ContentGuard has invested more than $100 million to develop these DRM solutions and bring them to market.

7.      ContentGuard expanded its commitment to research and innovation by developing end-to-end DRM systems and products embodying ContentGuard's inventions, an effort that continues today.  ContentGuard also provided DRM research expertise to various industry players that wished to have the freedom to custom-build and operate their own DRM systems.  In addition to its extensive collaboration with Microsoft, ContentGuard also partnered with companies such as Hewlett-Packard, Adobe, TimeWarner, and Accenture to assist them in developing DRM solutions.

8.      To further accelerate the evolution of the marketplace for digital content, ContentGuard also led the way in enabling industry groups to better understand DRM system requirements and to develop appropriate DRM specifications and industry standards that would allow for DRM interoperability between content providers, including distributors, and device manufacturers.   Among other things, recognizing the need for standardized mechanisms to facilitate trusted interoperability between DRM systems, ContentGuard engineers developed a standards-based rights description language called eXtensible Rights Markup Language ("XrML").   XrML, which is deployed in Microsoft DRM products, advanced the state of the art of rights expression languages by introducing features such as improved identification capabilities of the digital resource, user, and issuer.

9.      ContentGuard's important contributions to the DRM field have been widely recognized.   The *New York Times* hailed ContentGuard as a "pioneer in th[e] field of digital-rights management."   The *Los Angeles Times* similarly noted that ContentGuard held "the technological building blocks necessary to make the digital delivery of music, movies and other files secure."   Another market commentator remarked that ContentGuard "has almost single-handedly driven DRM interoperability."

10.      To this day, ContentGuard continues to innovate and invest in researching new and innovative DRM technologies and products that enable the distribution of rich multimedia content on smartphones, tablets, e-readers, laptop computers, smart televisions, set top boxes, and other electronic devices manufactured and sold worldwide.   Among other things, ContentGuard recently released an "app" under its own name that allows users to share documents, PDFs, and photos securely and privately.   To determine the areas of research and

development investment, ContentGuard leverages the expertise of its engineers and product development team.

11.     ContentGuard's DRM innovations remain immensely relevant—and immensely valuable—today.  The availability of rich multimedia content is a key driver of the enormous success experienced by manufacturers of devices such as smartphones, tablets, e-readers, smart televisions, or set top boxes, whose commercial value is largely driven by the capability of such devices to download, play, and display digital content.  Without effective DRM protection, many owners of digital content would not allow their content to be available on those devices.  As the president of the World Wide Web Consortium remarked in pointed language "Reject DRM and you risk walling off parts of the web."

12.     Virtually every smartphone, tablet, and e-reader produced and sold around the world relies on ContentGuard's DRM technology.  ContentGuard's new content-sharing "app" and related products that are currently under development similarly rely on ContentGuard's foundational DRM technology.  Without that technology, many companies that invest billions of dollars to produce movies, videos, books, music, and "apps" would be unwilling to distribute such digital content over the Internet.

**B.     The Defendant**

13.     Defendant Google, Inc. ("Google") is a corporation organized under the laws of the State of Delaware and registered to do business in the State of Texas, with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, CA 94043.  Google is doing business and infringing ContentGuard's DRM patents in the Eastern District of Texas and elsewhere in the United States.

14.     Google develops and distributes an open-source operating system known as Android ("Android OS").     Various companies, among them Amazon.com, Inc., HTC

Corporation, Huawei Technologies Co., Samsung Electronics America, Inc., and Google's own wholly-owned subsidiary Motorola Mobility LLC ("Motorola") make modifications to Google's open-source Android OS and thereafter incorporate it in devices that are sold throughout the United States.

15.     In addition to developing and distributing the open-source Android OS, Google maintains GooglePlay, a digital platform for the distribution of movies, videos, music, books, "apps," and other digital content for the Android ecosystem.

16.     Finally, Google makes, uses, offers to sell, and/or sells devices, including server and client devices, incorporating the Android OS and Google Play.   Google-made Android devices include those marketed under the trademark "Nexus."

## JURISDICTION AND VENUE

17.     This is a civil action arising in part under laws of the United States relating to patents (35 U.S.C. §§ 271, 281, 283, 284, and 285).  This court has federal jurisdiction of such federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18.     Personal jurisdiction is proper in the State of Texas and in this judicial district. Among other things, Google conducts business, sells infringing products, and is engaged in activities that lead to infringement of ContentGuard's DRM patents in the State of Texas and in this judicial district.   Google's wholly-owned subsidiary Motorola has a significant business presence in the State of Texas.

19.     Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

## THE PATENTS IN SUIT

20.     On November 8, 2005, the USPTO duly and legally issued United States Patent No. 6,963,859 ("the '859 Patent") entitled "Content rendering repository."   ContentGuard holds

all right, title and interest to the '859 Patent.  A true and correct copy of the '859 Patent is attached as Exhibit C.

21.     On April 21, 2009, the USPTO duly and legally issued United States Patent No. 7,523,072 ("the '072 Patent") entitled "System for controlling the distribution and use of digital works."  ContentGuard holds all right, title and interest to the '072 Patent.  A true and correct copy of the '072 Patent is attached as Exhibit D.

22.     On August 10, 2010, the USPTO duly and legally issued United States Patent No. 7,774,280 ("the '280 Patent") entitled "System and method for managing transfer of rights using shared state variables."  ContentGuard holds all right, title and interest to the '280 Patent.  A true and correct copy of the '280 Patent is attached as Exhibit E.

23.     On August 16, 2011, the USPTO duly and legally issued United States Patent No. 8,001,053 ("the '053 Patent") entitled "System and method for rights offering and granting using shared state variables."  ContentGuard holds all right, title and interest to the '053 Patent.  A true and correct copy of the '053 Patent is attached as Exhibit F.

24.     On September 11, 2007, the USPTO duly and legally issued United States Patent No. 7,269,576 ("the '576 Patent") entitled "Content rendering apparatus."  ContentGuard holds all right, title and interest to the '576 Patent.  A true and correct copy of the '576 Patent is attached as Exhibit G.

25.     On February 5, 2013, the USPTO duly and legally issued United States Patent No. 8,370,956 ("the '956 Patent") entitled "System and method for rendering digital content in accordance with usage rights information."  ContentGuard holds all right, title and interest to the '956 Patent.  A true and correct copy of the '956 Patent is attached as Exhibit H.

26.     On March 5, 2013, the USPTO duly and legally issued United States Patent No. 8,393,007 ("the '007 Patent") entitled "System and method for distributing digital content to be rendered in accordance with usage rights information."   ContentGuard holds all right, title and interest to the '007 Patent.  A true and correct copy of the '007 Patent is attached as Exhibit I.

27.     On May 29, 2007, the USPTO duly and legally issued United States Patent No. 7,225,160 ("the '160 Patent") entitled "Digital works having usage rights and method for creating the same."  ContentGuard holds all right, title and interest to the '160 Patent.  A true and correct copy of the '160 Patent is attached as Exhibit J.

28.     On November 12, 2013, the USPTO duly and legally issued United States Patent No. 8,583,556 ("the '556 Patent") entitled "Method of providing a digital asset for distribution." ContentGuard holds all right, title and interest to the '556 Patent.  A true and correct copy of the '556 Patent is attached as Exhibit K.

29.     The '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents are referred to herein as the "DRM Patents."

## CONTENTGUARD'S EFFORTS TO LICENSE GOOGLE'S USE OF ITS DRM TECHNOLOGIES

30.     Throughout its history, ContentGuard has prided itself in being an innovator and leader in the DRM field.  ContentGuard's revolutionary DRM technologies are embodied in its extensive portfolio of DRM patents and patent applications, which was developed during the past two decades and now comprises over 300 issued patents and 160 pending applications.

31.     Following its early partnerships with companies such as Hewlett-Packard, Adobe, Microsoft, Technicolor, and TimeWarner, ContentGuard successfully licensed its DRM technologies for use in smartphones and tablets to companies around the world, including Casio, Fujitsu, Hitachi, LG Electronics, NEC, Nokia, Panasonic, Pantech, Sanyo, Sharp, Sony, Toshiba,

and others.  These companies embraced ContentGuard's DRM technologies and agreed to license use of those technologies for substantial royalties.

32.     ContentGuard's numerous patent license agreements were executed without ContentGuard having to take legal action, or even threaten litigation, to protect its intellectual property rights.

33.     ContentGuard has made numerous attempts to negotiate a license agreement with Google's wholly-owned subsidiary Motorola and, more recently, with Google itself.  Despite ContentGuard's good-faith efforts, Google has refused to pay for its use of ContentGuard's DRM technologies.

### GOOGLE'S ATTEMPT TO AVOID THIS COURT'S JURISDICTION

34.     On December 18, 2013, ContentGuard filed a complaint for patent infringement in this Court (the "December 2013 Complaint") asserting infringement of the DRM Patents by, among other things, Amazon.com, Inc. ("Amazon"), Google's wholly-owned subsidiary Motorola, and Huawei Device USA, Inc. ("Huawei").  Amazon, Motorola, and Huawei each manufacture devices that run customized versions of Google's Android OS.  The December 2013 Complaint also named Apple Inc. and BlackBerry Corporation, which manufacture and sell devices that run operating systems that compete with the Android OS.

35.     On January 17, 2014, ContentGuard filed an amended complaint in this Court (the "January 2014 Amended Complaint").  In addition to reasserting its claims against Amazon.com, Inc., Motorola, and Huawei, ContentGuard also asserted that HTC Corporation ("HTC") and Samsung Electronics America, Inc. ("Samsung"), among other defendants, infringe the DRM Patents.  HTC and Samsung each manufacture devices that run customized versions of Google's Android OS.

36.     On January 31, 2014, instead of seeking to intervene in the multi-defendant action that was already pending in this Court, Google filed a complaint in the U.S. District Court for the Northern District of California (the "N.D. Cal. Action").   In its Complaint (the "Google Complaint"), Google admits that it was seeking relief pursuant to the Declaratory Judgment Act "because . . . ContentGuard . . . [had] recently filed a lawsuit in the Eastern District of Texas . . . claiming that several mobile device manufacturers, some of which are Google's customers, infringe some or all of [the DRM Patents]."   Google Compl. ¶ 1.   Google further admitted that the N.D. Cal. Action was anticipatory in nature, purportedly because "it is only a matter of time before Google . . . will be accused in a ContentGuard suit involving the [DRM Patents]."   *Id.* ¶ 19.

37.     In the N.D. Cal. Action, Google seeks a declaration that "no version of Google Play Books, Google Play Music, and/or Google Play Movies provided by Google directly or indirectly infringes the [DRM Patents]."   Google Compl. ¶ 22.

## COUNT 1:  INFRINGEMENT OF THE '859 PATENT

38.     Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

39.     Google has been and is now directly infringing and/or indirectly infringing the '859 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '859 Patent.  Google has notice of the '859 Patent.  Google actively induces content providers, device makers, and/or end users of devices made by Google and/or others to infringe the '859 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the

'859 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisements for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '859 Patent.[1]   Google engages in the foregoing activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '859 Patent.   Google thereby specifically intends end users, device makers, and content providers to infringe the '859 Patent.   Google derives revenue from both its own and the third-party infringers' infringing activities.   Google also contributorily infringes the '859 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

## COUNT 2:  INFRINGEMENT OF THE '072 PATENT

40.     Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

41.     Google has been and is now directly infringing and/or indirectly infringing the '072 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '072 Patent.   Google has notice of the '072 Patent.   Google actively induces content providers, device makers, and/or end users of

---

[1] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov CYC&hl=en.

devices made by Google and/or others to infringe the '072 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the '072 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisings for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '072 Patent.[2]   Google engages in the foregoing activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '072 Patent.   Google thereby specifically intends end users, device makers, and content providers to infringe the '072 Patent.   Google derives revenue from both its own and the third-party infringers' infringing activities.   Google also contributorily infringes the '072 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

### COUNT 3:  INFRINGEMENT OF THE '280 PATENT

42.      Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

43.      Google has been and is now directly infringing and/or indirectly infringing the '280 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the

---

[2] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov CYC&hl=en.

United States products covered by at least one claim of the '280 Patent.  Google has notice of the '280 Patent.  Google actively induces content providers, device makers, and/or end users of devices made by Google and/or others to infringe the '280 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the '280 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisings for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '280 Patent.[3]  Google engages in the foregoing activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '280 Patent.  Google thereby specifically intends end users, device makers, and content providers to infringe the '280 Patent.  Google derives revenue from both its own and the third-party infringers' infringing activities.  Google also contributorily infringes the '280 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

## COUNT 4:  INFRINGEMENT OF THE '053 PATENT

44.     Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

45.     Google has been and is now directly infringing and/or indirectly infringing the '053 Patent by way of inducement and/or contributory infringement, literally and/or under the

---

[3] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov CYC&hl=en.

doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '053 Patent.  Google has notice of the '053 Patent.   Google actively induces content providers, device makers, and/or end users of devices made by Google and/or others to infringe the '053 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the '053 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisings for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '053 Patent.[4]   Google engages in the foregoing activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '053 Patent.  Google thereby specifically intends end users, device makers, and content providers to infringe the '053 Patent.  Google derives revenue from both its own and the third-party infringers' infringing activities.   Google also contributorily infringes the '053 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

---

[4] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov CYC&hl=en.

## COUNT 5: INFRINGEMENT OF THE '576 PATENT

46.     Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

47.     Google has been and is now directly infringing and/or indirectly infringing the '576 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '576 Patent. Google has notice of the '576 Patent. Google actively induces content providers, device makers, and/or end users of devices made by Google and/or others to infringe the '576 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the '576 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisings for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '576 Patent.[5] Google engages in the foregoing activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '576 Patent. Google thereby specifically intends end users, device makers, and content providers to infringe the '576 Patent. Google derives revenue from both its own and the third-party infringers' infringing activities. Google also

---

[5] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov CYC&hl=en.

contributorily infringes the '576 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

## COUNT 6:  INFRINGEMENT OF THE '956 PATENT

48.     Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

49.     Google has been and is now directly infringing and/or indirectly infringing the '956 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '956 Patent.  Google has notice of the '956 Patent.   Google actively induces content providers, device makers, and/or end users of devices made by Google and/or others to infringe the '956 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the '956 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisements for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '956 Patent.[6]   Google engages in the foregoing activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '956 Patent.  Google thereby specifically intends

---

[6] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov CYC&hl=en.

end users, device makers, and content providers to infringe the '956 Patent.  Google derives

revenue from both its own and the third-party infringers' infringing activities.  Google also

contributorily infringes the '956 Patent because there is no substantial non-infringing use of

content and "apps" on devices that render them, including Google's own Nexus devices.

### COUNT 7:  INFRINGEMENT OF THE '007 PATENT

50.     Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

51.     Google has been and is now directly infringing and/or indirectly infringing the

'007 Patent by way of inducement and/or contributory infringement, literally and/or under the

doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including

by making, using, selling, and/or offering for sale in the United States or importing into the

United States products covered by at least one claim of the '007 Patent.  Google has notice of the

'007 Patent.  Google actively induces content providers, device makers, and/or end users of

devices made by Google and/or others to infringe the '007 Patent by, among other things, (a)

providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the

'007 Patent, (b) providing instructions for using such content and "apps"; (c) providing

advertisements for using such content and "apps"; and (d) providing hardware and software

components required by the claims of the '007 Patent.[7]  Google engages in the foregoing

activities because it specifically intends end users and device makers to use content and "apps"

---

[7] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android
UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov
CYC&hl=en.

that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '007 Patent. Google thereby specifically intends end users, device makers, and content providers to infringe the '007 Patent. Google derives revenue from both its own and the third-party infringers' infringing activities. Google also contributorily infringes the '007 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

## COUNT 8:  INFRINGEMENT OF THE '160 PATENT

52.     Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

53.     Google has been and is now directly infringing and/or indirectly infringing the '160 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '160 Patent. Google has notice of the '160 Patent. Google actively induces content providers, device makers, and/or end users of devices made by Google and/or others to infringe the '160 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the '160 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisings for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '160 Patent.[8]   Google engages in the foregoing

---

[8] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;
https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;

activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '160 Patent.  Google thereby specifically intends end users, device makers, and content providers to infringe the '160 Patent.  Google derives revenue from both its own and the third-party infringers' infringing activities.  Google also contributorily infringes the '160 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

## COUNT 9:  INFRINGEMENT OF THE '556 PATENT

54.    Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

55.    Google has been and is now directly infringing and/or indirectly infringing the '556 Patent by way of inducement and/or contributory infringement, literally and/or under the doctrine of equivalents, in this District, and elsewhere, in violation of 35 U.S.C. § 271, including by making, using, selling, and/or offering for sale in the United States or importing into the United States products covered by at least one claim of the '556 Patent.  Google has notice of the '556 Patent.  Google actively induces content providers, device makers, and/or end users of devices made by Google and/or others to infringe the '556 Patent by, among other things, (a) providing access to content and "apps" that use the ContentGuard DRM solutions claimed in the '556 Patent, (b) providing instructions for using such content and "apps"; (c) providing advertisings for using such content and "apps"; and (d) providing hardware and software components required by the claims of the '556 Patent.[9]   Google engages in the foregoing

---

https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov
CYC&hl=en.

[9] *See, e.g.*, https://play.google.com/store/movies?hl=en;
https://play.google.com/store/apps/details?id=com.google.android.videos;

activities because it specifically intends end users and device makers to use content and "apps" that deploy, and content providers to distribute content and "apps" that are protected by, the ContentGuard DRM solutions claimed in the '556 Patent.  Google thereby specifically intends end users, device makers, and content providers to infringe the '556 Patent.  Google derives revenue from both its own and the third-party infringers' infringing activities.  Google also contributorily infringes the '556 Patent because there is no substantial non-infringing use of content and "apps" on devices that render them, including Google's own Nexus devices.

## WILLFUL INFRINGEMENT

56.     Paragraph 33 is incorporated by reference as if fully set forth herein.  Google's infringement occurred with knowledge of and/or objective recklessness and thus has been and continues to be willful and deliberate.  Google's willful and deliberate infringement entitles ContentGuard to enhanced damages under 35 U.S.C. § 285.

## IRREPARABLE HARM TO CONTENTGUARD

57.     ContentGuard has been irreparably harmed by Google's acts of infringement, and will continue to be harmed unless and until Google's acts of infringement are enjoined by this Court.  ContentGuard has no adequate remedy at law to redress Google's continuing acts of infringement.  The hardships that would be imposed upon Google by an injunction are less than those faced by ContentGuard should an injunction not issue.  Furthermore, the public interest would be served by issuance of an injunction.  As a result of Google's acts of infringement,

---

https://play.google.com/about/music/unlock/;
https://play.google.com/store/apps/details?id=com.google.android.apps.books;
http://www.google.com/nexus/5/.;
http://static.googleusercontent.com/media/www.google.com/en/us/help/hc/pdfs/mobile/Android UsersGuide-40-en.pdf;
https://play.google.com/store/books/details/Google_Inc_Nexus_7_Guidebook?id=gKmQD47Ov CYC&hl=en.

ContentGuard has suffered and will continue to suffer damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** ContentGuard prays for the following relief:

58.     A judgment that Google directly and/or indirectly infringes the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

59.     A permanent injunction preventing Google and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from engaging in infringing activities with respect to the '859, '072, '280, '053, '576, '956, '007, '160, and '556 patents;

60.     A judgment that Google's infringement has been willful;

61.     A ruling that this case is exceptional under 35 U.S.C. § 285;

62.     A judgment and order requiring Google to pay ContentGuard damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of judgment, with an accounting, as needed, as well as treble damages for willful infringement under 35 U.S.C. § 285;

63.     A judgment and order requiring Google to pay ContentGuard's costs of this action (including all disbursements);

64.     A judgment and order requiring Google to pay pre-judgment and post-judgment interest on damages awarded;

65.     A judgment and order requiring that in the event a permanent injunction preventing future infringement is not granted, that Google pay ContentGuard a compulsory ongoing licensing fees; and

66.     Such other and further relief as the Court may deem just and proper.

Dated:  February 5, 2014                    Respectfully submitted,

                                            _/s/ Sam Baxter_____
                                            Samuel F. Baxter
                                            Texas State Bar No. 01938000
                                            sbaxter@mckoolsmith.com
                                            MCKOOL SMITH, P.C.
                                            104 East Houston, Suite 300
                                            Marshall, Texas 75670
                                            Telephone:  (903) 923-9000
                                            Facsimile: (903) 923-9099

Robert A. Cote                              Holly E. Engelmann
rcote@mckoolsmith.com                       hengelmann@mckoolsmith.com
Radu A. Lelutiu                             Seth R. Hasenour
rlelutiu@mckoolsmith.com                    shasenour@mckoolsmith.com
Shahar Harel                                MCKOOL SMITH P.C.
sharel@mckoolsmith.com                      300 Crescent Court, Suite 1500
David R. Dehoney                            Dallas, Texas 75201
ddehoney@mckoolsmith.com                    Telephone:  (214) 978-4000
Angela M. Vorpahl                           Facsimile:   (214) 978-4004
avorpahl@mckoolsmith.com
MCKOOL SMITH P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444


                                            **ATTORNEYS FOR CONTENTGUARD
                                            HOLDINGS, INC.**