# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ContentGuard Holdings, Inc., | ) |
| | ) Civil Action No. 2:14-cv-61 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Google, Inc., | ) |
| | ) |
| Defendant. | ) |

**GOOGLE INC.'S MOTION TO STAY, OR IN THE ALTERNATIVE
TO TRANSFER VENUE, BASED ON A FIRST-FILED ACTION
<u>PENDING IN THE NORTHERN DISTRICT OF CALIFORNIA</u>**

Mirror-image actions involving the same parties, the same patents, and the same issues of infringement/non-infringement are currently pending before the United States District Court for the Northern District of California (filed on January 31, 2014) and this Court (filed on February 5, 2014). Under well-established law, this action, as the second-filed, should be stayed pending determination by the first-filed forum of the appropriate venue for adjudicating the dispute. In the alternative, this action should be transferred to the Northern District of California, the venue of the first-filed action and the venue that will be most conducive to the convenience of the parties and witnesses and the interests of justice.

Plaintiff ContentGuard Holdings, Inc. ("ContentGuard") made a decision to sue several device manufacturers for allegedly infringing ContentGuard's patents by providing software applications that manage digital rights on their devices, generally alleging that each defendant infringes ContentGuard's patents because the defendants provide access, instructions and advertising for using certain infringing "apps" and because each of the defendants "provide hardware and software components required by the claims" of each patent. (Ex. 1, Customer Action, Am. Compl. ¶ 57-63.) In this lawsuit, despite pointing to Google, Inc. ("Google") as one of the providers of such software, ContentGuard chose not to sue Google. At that point, Google had the right to avoid seriatim lawsuits against its customers by filing a declaratory judgment action regarding its rights in Google Play. Google exercised that right and filed a declaratory judgment action in the Northern District of California on January 31, 2014. (Ex. 2, Compl., N.D. Cal. Case No. 3:14-cv-498.) ContentGuard then retaliated and filed a new, second-filed suit here in the Eastern District of Texas. Faced with this factual scenario, courts routinely allow the first-filed declaratory judgment action to proceed rather than the second-filed suit.

## BACKGROUND

On December 18, 2013, ContentGuard filed a Complaint for Patent Infringement in this

district against device manufacturers Amazon.com, Inc., Apple Inc., Blackberry Corp., Huawei Device USA, Inc. and Motorola Mobility LLC. The Complaint alleges that these defendants sell devices that infringe Plaintiff's patents by running various software applications that manage digital rights, including the software offered by Google's Google Play apps[1], as well as the Amazon Kindle app and a standard known as UITS ("the customer case"). (Ex. 3, Customer Case, Compl. ¶¶ 41-46; *see id.* ¶ 43 ("[O]n information and belief, each of the Defendants have accused products and methods that use one or more of the Google Play "apps" (Google Play Books, Google Play Movies, and Google Play Music) to practice the claimed invention.").) On January 17, 2014, ContentGuard amended its complaint to add additional device manufacturer defendants Blackberry Ltd., HTC Corp., HTC America, Inc., Huawei Technologies Co. Ltd., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America LLC, again alleging that their devices infringe ContentGuard's patents by running software applications, namely Google's Google Play apps, Amazon's Kindle app and the UITS standard. (Ex. 1, Customer Case, Am. Compl. ¶¶ 52-55.) Although ContentGuard sued several of Google's customers based on their use of Google's Google Play apps, Google was not named as a defendant in that action.

Google filed its declaratory judgment suit against ContentGuard in the Northern District of California on January 31, 2013 ("the California case"). (Ex. 2, California Case, Compl.) In its complaint, Google seeks a declaratory judgment that use of its Google Play apps do not infringe ContentGuard's U.S. Patent Nos. 6,963,859; 7,523,072; 7,774,280; 8,001,053; 7,269,576; 8,370,956; 8,393,007; 7,225,160; and 8,583,556 ("the patents-in-suit").

Five days after Google filed its action in the Northern District of California,

---

[1] "App" refers to an "application", which is software designed to run on electronic devices such as smartphones.

ContentGuard filed the instant action in this court against Google: a mirror-image action to Google's first-filed case ("the Texas case"). In its complaint, ContentGuard alleges that Google infringes the same nine ContentGuard patents-in-suit as are at issue in the California case, and that Google induces its customers to infringe, apparently through use of Google's Google Play apps. (Ex. 4, Compl.) Thus, the Texas case is the mirror-image of the California case filed five days earlier: each involves identical parties and identical claims regarding Google's alleged infringement of the same nine ContentGuard patents-in-suit.

Simultaneously with this motion, Google has filed a motion in the Northern District of California to enjoin ContentGuard's prosecution of this later-filed Texas case, based on the first-filed rule and the convenience of the parties and witnesses and the interests of justice. A copy of that motion is attached as Exhibit 5.

## DISCUSSION

**I.    The Northern District of California Should Decide the Venue for the Parties' Dispute.**

The first-to-file rule directs that when parallel cases with substantially overlapping parties and issues are pending before different district courts, the court of the second-filed action should refuse to hear the action in deference to the court of the first-filed action. *Murrell v. Casterline*, No. 10-794, 2011 WL 2600600, at *1 (E.D. Tex. June 29, 2011). The Fifth Circuit has recognized this rule "based on principles of comity and sound judicial administration." *Id.* Where parallel actions have been filed in different district courts, it is the duty of the court where the first-filed action is pending, here the Northern District of California, to determine what venue is appropriate. "The 'first-to-file rule' not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated. In the absence of compelling

circumstances the court initially seized of a controversy should be the one to decide whether it will try the case." *Id*. at *2; *Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*, No. 08-478, 2010 WL 3025243, at *2 (E.D. Tex. July 29, 2010) (same); *Acceleron, LLC v. Egnera, Inc.*, 634 F. Supp. 2d 758, 763 (E.D. Tex. 2009) ("The Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."). In order to avoid wasteful litigation burdens on the court and the parties, the court where the second-filed action is pending generally issues a stay pending the venue decision by the court with the first-filed complaint. *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 774 (E.D. Tex. 2009).

### A.     The California Case is the First-Filed Action.

As the California case was filed five days before the Texas case, it is the first-filed action. The fact that the California case is a declaratory judgment action does not alter the first-to-file rule. *Sanofi-Aventis*, 614 F. Supp. 2d at 774 ("As a general rule, a first-filed declaratory judgment suit will be entitled to precedence over a later-filed patent infringement action.").

The pendency of the customer case in this district does not alter the Northern District of California's position as the court of the first-filed action. Although the same patents are at issue, and ContentGuard asserts that one basis of the alleged infringement is that the customers' use of Google Play apps allegedly infringe the patents-in-suit, Google itself is not a party to the customer action. Nor are any of the defendants in the customer action parties in the mirror-image Texas case and California case. (In fact, including Google in the customer case would have been misjoinder under the America Invents Act, 35 U.S.C. § 299, a fact that ContentGuard implicitly recognized by filing its Texas case separately, rather than attempting to add Google as a defendant to the customer case.) In *Adobe Systems Inc. v. Select Retrieval, LLC*, No. 12-2342,

4

2014 WL 497441 (S.D. Cal. Feb. 6, 2014), for example, Select Retrieval had filed several suits against Adobe's customers alleging infringement of its patents, but did not name Adobe as a party. *Id.* at *1. Adobe then filed a declaratory judgment action against Select Retrieval based on the same patents. *Id.* at *3. Select Retrieval moved to dismiss Adobe's declaratory judgment suit, arguing that its customer suits were filed first, and thus application of the first-to-file rule mandated that the Adobe suit be dismissed in deference to the customer suits. *Id.* at *3. The court held that the first-to-file rule did not apply because Adobe's interests were not adequately represented in the customer suits. *Id.* at *5. In addition, the court noted that the customer suits alleged infringement of Select Retrieval's patents by the customers' own use of Adobe's technology, so that a finding of whether or not use of the accused Adobe technology infringed could vary based on each customer's use of it. *Id.* at *4. So too here, the customer suit is not substantially similar to the mirror-image California case and Texas case as the only overlapping party is ContentGuard itself; the issues of infringement could vary depending on each customer's accused use of Google's technology on the customers' various accused devices. In addition, although the alleged infringement of ContentGuard's patents via use of the Google Play apps is at issue in the customer suit as well as the California case and the Texas case, additional allegations regarding non-Google products such as the Amazon Kindle app and the UITS standard are also involved in the customer case. (Ex. 1, Customer Case, Am. Compl. ¶¶ 50-54.) The customer case thus does not dislodge the California case's status as the first-filed suit over this Texas action.

      In fact, even if the earlier filing date of the customer suit were considered relevant, its status as a peripheral action to the California case would still dictate that the California case, involving Google as the "primary party" as to the allegations involving Google's Google Play apps, take precedence, *i.e.*, that Google's case would proceed in the Northern District of

5

California despite the earlier filing date of the customer suit, with the customer suit stayed if deemed appropriate in that case.  *Nintendo*, 2013 WL 5345899, at *7 ("the 'customer suit exception' [to the first-to-file rule] endorses staying a case against a customer or retailer in light of the notion that the manufacturer is the 'true defendant.'").  "[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming district court presiding over manufacturer suit in its order enjoining the patentee from prosecution of separate action against customer defendants).  In patent infringement litigation, claims against a customer of a manufacturer are considered to be "peripheral" to those against the manufacturer, so that even a later-filed suit involving the manufacturer will take precedence, to further the policy that "infringement determinations should be made in suits involving the true defendant . . . the party that control's the product's design."  *Ciena Corp. v. Nortel Networks Inc.*, No. 05-14, 2005 WL 1189881, at *9 (E.D. Tex. May 19, 2005); *see LG Elec. Inc. v. Advance Creative Computer Corp., DTK*, 131 F. Supp. 2d 804, 811 (E.D. Va. 2001) (finding claims against subsidiary "peripheral" to main claims against corporation, and therefore severing and transferring claims against corporation); *see also Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 04-2391, 2005 WL 2415960, at *5-8 (N.D. Tex. Sept. 30, 2005) (severing and transferring claims against manufacturer of accused product from those "peripheral" claims made against distributor).  The object of the present litigation focuses on Google Play Books', Google Play Music's, and Google Play Movies' alleged infringement of the ContentGuard patent claims, whereas the customer case focuses on the *incorporation* of these applications into some of Google's customers' independent devices.  Thus, the customer case truly is "peripheral" to the California case and Texas case, and should not affect this Court's analysis of the appropriate venue for *this case* when deciding the motion to stay, or in the alternative, transfer.  *See Spread*

6

*Spectrum Screening, LLC v. Eastman Kodak Co.*, No. 10-1101, 2010 WL 3516106, at *2-3 (N.D. Ill. Sept. 1, 2010) (finding customers who used an accused product peripheral to the litigation against manufacturer).

### B. The California Case is Not Anticipatory.

Although ContentGuard has suggested that the California case was anticipatory and the first-to-file rule should not be followed, that exception to the first-to-file rule does not apply here. Google's declaratory judgment was not filed for the purpose of depriving ContentGuard of the "right to select the proper forum." *Strukmeyer, LLC v. Infinite Financial Sols., Inc.,* No. 13-3798, 2013 WL 6388563, at *7 (N.D. Tex. Dec. 5, 2013). Of course, if Google had not anticipated a future dispute with ContentGuard, its declaratory judgment claim would lack the immediacy required for its lawsuit to be justiciable. *See Commil USA, LLC v. Cisco Sys., Inc.,* No. 07-341, 2008 WL 4426591, at *3 (E.D. Tex. Sept. 25, 2008). But "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it . . . is not in itself improper anticipatory litigation or otherwise abusive forum shopping." *Sherwin-Williams Co. v. Homes Cty.*, 343 F.3d 383, 391 (5th Cir. 2003).

The facts preceding the filing of Google's California case refute any suggestion the filing was anticipatory. Google never received a cease-and-desist letter from ContentGuard, nor did it engage in any discussions in which a threat of litigation deadline was discussed. Although Google believed there was an "immediacy" to protecting its rights surrounding Google Play Books, Google Play Music, and Google Play Movies that led it to file the California case, this belief was not derived from communications with ContentGuard, but from 1) ContentGuard's filing of the customer case against companies that were identified as unlicensed entities (as was Google) in one of ContentGuard's recent public filings, and 2) ContentGuard's allegations in the customer suit, which explicitly called out Google Play Books, Google Play Music, and Google

7

Play Movies, as being used to practice ContentGuard's patents-in-suit. Google's California case was not filed in reaction to a direct threat, but was filed in accordance with the premise of the Declaratory Judgment Act—to remove the cloud of threatened infringement litigation. *See Elec. for Imaging v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (holding declaratory judgment suit not anticipatory where it was filed in response to threat of infringement claims against plaintiff's customers). It thus was not anticipatory, and the California court is the proper forum to decide the venue for the parties' dispute.

### C. A Stay of the This Action is Appropriate Pending the California Court's Venue Decision.

As the first-filed action, the court in the California case should decide the correct venue for the parties' dispute. It is thus appropriate for this Court to stay the Texas case pending the California court's ruling on Google's motion to enjoin ContentGuard from prosecuting the Texas case. *Excentus Corp. v. Kroger Co.*, No. 10-483, 2010 WL 3606016, at *4 (N.D. Tex. Sept. 16, 2010) (staying second-filed action pending determination by district of first-filed action on proper venue for dispute); *Sanofi-Aventis*, 614 F. Supp. 2d at 781 (staying action pending venue determination in court of first-filed action).

### III. In the Alternative, this Action Should Be Transferred to the Northern District of California Pursuant to the First-Filed Rule and 28 U.S.C. § 1404(a).

If this Court declines to defer a venue decision pending a determination by the court of the California case, this action should be transferred to the Northern District of California. Pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court should transfer the action if the balance of private and public factors show that the proposed transferee district is "clearly more convenient" than the Eastern District of Texas. *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 13-11, 2014 WL

459719, at *2 (E.D. Tex. Jan. 31, 2014). Here, the factors weigh strongly in favor the of the Northern District of California, making transfer of this action appropriate.

### A. Venue is Proper in the Northern District of California.

The first factor in a Section 1404(a) transfer analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *VirtualAgility*, 2014 WL 459719, at *1. A patent infringement suit may be brought in any district where the defendant is alleged to have committed acts of infringement or where the defendant resides. 28 U.S.C. § 1400(b). Google's principal place of business is located within the Northern District of California (*Id.*). Venue is thus proper in the proposed transferee court.

### B. The Convenience of the Parties and Witnesses Favors Transfer to the Northern District of California.

When considering the convenience of the parties and witnesses, courts consider several factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *VirtualAgility*, 2014 WL 459719, at *1. Here, these "private interest" factors weigh strongly in favor of transferring this action to the Northern District of California.

#### 1. The Relative Ease of Access to Sources of Proof Favors Transfer.

This factor turns on which party "will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Optimum Power Sols. LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genetech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Google's principal place of business is in Mountain View, California, within the Northern District of California, and this is where material decisions relating to the development, engineering and marketing of Google Play occurred.  (Ex. 6, Dubey Decl. ¶¶ 3, 4, 6.)  The Northern District of California is also where the majority of employees involved in the development and management of Google Play are located, and relevant documentary evidence is also available in that district.  (*Id.* ¶¶ 6, 9.)  *See In re TOA Techs., Inc.*, __ Fed. Appx. __, 2013 WL 5486763, at *3 (Fed. Cir. Oct. 3, 2013) (although much documentary evidence is now kept electronically, this factor must still be weighed in favor of the venue where relevant documents are located).

In contrast, no relevant evidence appears to be located in the Eastern District of Texas. Google has no employees in the Eastern District of Texas, none of the development or management of Google Play takes place in this district, no development or management personnel for Google Play reside in this district, and no known documents related to Google Play, general operations, marketing, financials, licensing practices, and/or customer-service are located in this district.  (Dubey Decl. ¶¶ 5, 7, 8.)

The Northern District of California appears to be convenient for ContentGuard as well, as it has substantial contacts with that district.  During the period from 2009-2013, it was headquartered in El Segundo, California, from where it actively pursued efforts to license or otherwise monetize its patent portfolio, including the patents-in-suit. ContentGuard has "successfully licensed its DRM technologies for use in smartphones and tablets" to companies with U.S. headquarters in California, including Nokia, Toshiba, Fujitsu, Hitachi and Sanyo.  (*See* Ex. 1, Customer Case, Am. Compl. ¶ 38.)  Additionally, ContentGuard recently moved its headquarters to Texas from El Segundo, California, in August 2013, suggesting an effort to justify venue in this Court.  (Ex. 7, Tex. Sec. of St. Rpt.)  Because ContentGuard has strong

10

contacts with California, its current location should be given little deference. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381-82 (Fed. Cir. 2010) (holding that the patentee's presence in Texas was entitled to no weight where it "appears to be recent, ephemeral, and an artifact of litigation"); *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (holding that the court need not weigh connections to forum "made in anticipation of litigation and for the likely purpose of making that forum appear convenient," rejecting plaintiff's claim of connection to state where it incorporated sixteen days before filing suit).

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer.

Google has knowledge of several non-party witnesses that likely will be needed to provide testimony in this action; many of them are located in the Northern District of California, but none are located in this district. For example, key portions of the accused Google Play service use technology from Adobe Systems, Inc. ("Adobe"). (Ex. 6, Dubey Decl. ¶ 10.) Google anticipates that it will need to subpoena documents and testimony from Adobe to support its defense of this action. Adobe is headquartered in San Jose, California, within the Northern District of California, and its relevant employees and documents are likely located there as well. (*Id.*) *Lone Star Doc. Mgmt., LLC v. Catalyst Repository Sys., Inc.*, No. 12-164, 2013 WL 5496816, at *2 (E.D. Tex. Mar. 15, 2013) (the bulk of a corporation's documents are presumed to be located at the corporate headquarters).

Although Google does not know where ContentGuard's executive team resides, litigation in the Northern District of California would likely be more convenient for a majority of ContentGuard's witnesses, as Pendrell, ContentGuard's 90.1% shareholder, maintains an office in San Francisco, California, and numerous inventors of the ContentGuard patents reside in California. *See In re Hoffman-La Roche Inc.*, 587 F.3d at 1337-38 (a venue is favored when it

11

has subpoena power to compel attendance at deposition and trial over the majority of non-party witnesses). Specifically, Mark J. Stefik, inventor of the '859, the '072, the '576, the '956, the '007, and the '160 patents, resides in Portola Valley, California. (Ex. 8.) Peter Pirolli, inventor of the '859, '072, '576, '956, '007, and the '160 patents, resides in or around San Francisco, California. (*Id.*) Ralph Merkle, inventor of the '576 and the '160 patents, resides in or around San Francisco, California. (*Id.*) Mai Nguyen, inventor of the '280 and '053 patents resides in Sunnyvale, California. (*Id.*) Xin Wang, inventor of the '280 and the '053 patents, resides in Los Angeles, California. (*Id.*) Thanh Ta, inventor of the '280 patent, resides in Irvine, California. (*Id.*) Finally, Eddie Chen, inventor of the '280 and the '053 patent, resides in Los Angeles, California. (*Id.*) *See In re Biosearch Techs., Inc.*, 452 Fed. Appx. 986, 988 (Fed. Cir. 2011) (weighing costs of travel and lost time for the third-party inventors in patent action); *In re Morgan Stanley*, 417 Fed. Appx. 947, 949 (Fed. Cir. Apr. 6, 2011) (giving weight to locale of inventors, patent prosecution attorneys, and defendants' employees with relevant knowledge). Though this Court has the authority to subpoena these anticipated third-party witnesses for deposition, they would be not be subject to compulsory process for any trial in this district. Thus, because the witnesses would be subject to such process in the Northern District of California that district is the preferred venue, as live trial testimony could be compelled there. *See Remmers v. United States*, No. 09-345, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009) ("The Supreme Court has indicated a strong preference for live testimony. 'Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.'") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947)).

### 3. The Cost of Attendance for Willing Witnesses Favors Transfer.

The convenience of witnesses "is probably the single most important factor" in

determining the convenience of a forum, and consideration of this factor shows that the Northern District of California is more favorable for both parties than this district. *In re Genentech*, 566 F. 3d 1338, 1342 (Fed. Cir. 2009). None of Google's anticipated employee witnesses with material information pertaining to Google Play are located in the Eastern District of Texas—every employee witness would have to be transported to this district for trial; most, if not all of them from the Northern District of California. If Google were required to transport its employee witnesses to this district from California, it would incur needless travel and lodging expenses, as well as the loss of employee work time occasioned by the employees' travel to Texas, which could be avoided if the dispute was decided in the Northern District of California. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2011) (required travel of party witnesses to forum would cause "significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work," as well as "personal costs associated with being away from work, family, and community," considerations that should be taken into account in a transfer decision).

In particular, the lead Software Engineer for Google Play, Ficus Kirkpatrick, (2) Staff Software Engineer for Google Play, Nicolas Catania, and (3) Principal Engineer for Google Play, Debajit Ghosh are all located in Mountain View, California. (Ex. 6, Dubey Decl. ¶ 6.) The employees are expected to provide testimony in this action. (*Id.*)

### 4. Other Practical Problems Favor Transfer.

As discussed in the initial part of this motion, transfer would promote judicial efficiency in light of the first-filed mirror-image case pending in the Northern District of California. The California court in that earlier-filed action will be addressing the same issues of infringement as are at issue in this Texas case. In accord with the first-to-file rule, this factor weighs in favor of transfer. *Morgan Stanley*, 417 Fed. Appx. at 949 (consolidation with related litigation weighs in

favor of transfer). In addition, this case is in its infancy; nothing has happened beyond the filing of the Complaint. Thus, this Court has not expended a great deal of time or resources on this case. *See Lone Star*, 2013 WL 5496816, at *5 (considering amount of court resources spent on case to point of transfer decision).

### C. The Interests of Justice Favor Transfer to the Northern District of California.

In considering the interests of justice, courts consider (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *VirtualAgility*, 2014 WL 459719, at *1. These considerations also weigh strongly in favor of transfer to the Northern District of California.

#### 1. Administrative Difficulties From Court Congestion is Neutral.

The PriceWaterhouseCoopers 2013 Patent Litigation Study indicates that the median time to trial for patent cases in this Court is 2.19 years, compared to 2.72 years in the Northern District of California. (Ex. 9, 2013 Patent Litigation Study at 22.) This factor is neutral, as the difference in median time is only about six months. *See Affinity Labs of Tex. v. Samsung Elecs. Co.*, __ F. Supp. 2d __, 2013 WL 5508122, at *2 (E.D. Tex. Sept. 18, 2013) (court congestion factor neutral as between the Eastern District of Texas and the Northern District of California).

#### 2. The Local Interest in Having Localized Interests Decided at Home Favors Transfer.

The Federal Circuit has directed that in patent actions, the locale where the alleged infringing product was designed and developed be considered to have a "significant interest" in the controversy. *TOA Techs.*, 2013 WL 5486763, at *3 (Fed. Cir. Oct. 3, 2013). The place where the product accused of infringement was developed has a "strong" local interest in the

14

controversy "because the cause of action calls into question the work and reputation" of the accused product's developers. *In re Hoffman-LaRoche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); *see Affinity Labs*, 2013 WL 5508122, at *3 ("The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley."). Google's Google Play apps were designed and developed in Mountain View, California, giving the Northern District of California a strong local interest in this dispute. (Ex. 6, Dubey Decl. ¶¶ 4, 6.) In contrast, where, as here, the accused product is sold nationwide, its alleged sale in the plaintiff's chosen forum does not establish a substantial connection to that forum. *TOA Techs.*, 2013 WL 5486763, at *3.

### 3. Both Courts Are Equally Familiar with the Patent Laws.

Because the parties' claims arise under the federal patent laws, the law is uniform nationwide and this factor is neutral. *In re Link-a-Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).

### 4. There is No Concern Regarding Conflict of Laws.

Finally, patent cases generally do not present any conflict of law issues, and no such issues are apparent in this case. *Invensense, Inc. v. STMicroelectronics, Inc.*, No. 13-40501, 2014 WL 105627, at *7 (E.D. Tex. Jan. 10, 2014).

### CONCLUSION

Defendant Google respectfully requests the Court to stay this action pending the United States District Court for the Northern District of California's ruling on Google's Motion to Enjoin Defendant From Pursuing Duplicative Litigation in Case No. 3:14-cv-498, or in the alternative, to transfer this action to the Northern District of California.

Dated: February 20, 2014

Respectfully submitted,

**MANN | TINDEL | THOMPSON**
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

By:   */s/ J. Mark Mann*
 **J. Mark Mann**
 State Bar No. 12926150
 **G. Blake Thompson**
 State Bar No. 24042033

**ATTORNEYS FOR GOOGLE, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ J. Mark Mann*
**J. Mark Mann**

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and this Court's Orders. The personal conference required by the rules was conducted by telephone by Robert Unikel, Deanna Keysor, and Timothy Chou for Google, Inc. and by Radu Lelutiu for ContentGuard Holdings, Inc., on February 12, 2014. The parties agreed during the conference that discussions had conclusively reached an impasse, leaving an open issue for the Court to resolve. ContentGuard opposes this motion.

*/s/ J. Mark Mann*
**J. Mark Mann**

16