# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CONTENTGUARD HOLDINGS, INC., | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:14-CV-61-JRG |
| | § | |
| GOOGLE, INC., | § | |
| | § | |
|     *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions filed by Plaintiff ContentGuard Holdings, Inc. ("ContentGuard") and Defendants Google, Inc., HTC America, Inc., HTC Corporation, Huawei Device USA, Inc., Huawei Technologies Co., Ltd., Motorola Mobility LLC, Samsung Electronics Co., Ltd., and Samsung TeleCommunications America, LLC (collectively, "Defendants"): (1) ContentGuard's Motion for Judgment as a Matter of Law with Respect to the Google-Samsung Trial or, in the Alternative, for a New Trial (Dkt. No. 400[1]; Dkt. No. 1038 in Case No. 2:13-cv-1112); (2) Defendants' Motion for Judgment of Invalidity as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b), and in the Alternative, Request for a New Trial Pursuant to Federal Rule of Civil Procedure 49 (Dkt. No. 397; Dkt. No. 1034 in Case No. 2:13-cv-1112); (3) Defendants' Conditional Motion for Bench Trial on Defendants' Inequitable Conduct Defenses (Dkt. No. 396; Dkt. No. 1032 in Case No. 2:13-cv-1112); and (4) Google's Motion for Judgment of Laches (Dkt. No. 394; Dkt. No. 1038 in Case No. 2:13-cv-1112). For the reasons set forth below, the Court finds that each of these motions should be **DENIED**.

---

[1] Unless otherwise indicated, references to the docket are for Case No. 2:14-cv-61.

# I. BACKGROUND

The Court held a jury trial in this case and the jury returned a unanimous verdict on September 23, 2015, that Defendants had not infringed United States Patents Nos. 6,963,859 ("the '859 Patent"), 7,523,072 ("the '072 Patent"), 8,370,956 ("the '956 Patent"), and 8,393,007 ("the '007 Patent") (collectively, the "Trusted Repository Patents" or "Stefik Patents"); and 8,001,053 ("the '053 Patent") (the "Meta Rights Patent," "Nguyen/Chen Patent," or "Nguyen Patent") (all, collectively, "the patents-in-suit"). The jury also found that Defendants had not proved that ContentGuard's patents were invalid. ContentGuard and Defendants now uniformly assert that, in the approximately 36 hours of testimony and evidence presented at trial, the jury did not have sufficient evidence for its findings. The Court disagrees.

# II. APPLICABLE LAW

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit law, a court is to be "especially deferential" to a jury's verdict, and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden* 393 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

### III. ANALYSIS

To prove infringement under 35 U.S.C. § 271, a plaintiff must show the presence of every element, or its equivalent, in the accused product or service. *Lemelson v. United States*,

752 F.2d 1538, 1551 (Fed. Cir. 1985). First, the claim must be construed to determine its scope and meaning; and second, the construed claim must be compared to the accused device or service. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). "A determination of infringement is a question of fact that is reviewed for substantial evidence when tried to a jury." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007).

An issued patent is presumed valid. 35 U.S.C. § 282; *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012). Samsung has the burden to show by clear and convincing evidence that the asserted claims were anticipated by or obvious over the prior art. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). To prevail on judgment as a matter of law, moreover, Samsung must show that no reasonable jury would have a legally sufficient evidentiary basis to find for the Plaintiff. FED. R. CIV. P. 50. "Generally, a party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochoride*, 676 F.3d 1063 (Fed. Cir. 2012) (internal quotation marks omitted).

### A. Infringement of the Patents-In-Suit

ContentGuard argues that the Court should enter judgment of infringement as a matter of law because Defendants "failed to present a meritorious non-infringement defense" and instead "misled the jury to a verdict of non-infringement by repeatedly urging arguments the Court had already rejected in its *Markman* and other pre-trial orders." (Inf. JMOL at 1.) More specifically,

ContentGuard argues that because "there is no dispute concerning the structure or operation of the accused device, . . . the issue of whether the claim language reads on the device is purely one of claim construction properly resolved by the Court." *See* (*id.* at 5.) Further, ContentGuard argues that because all of Defendants' noninfringement arguments "were contrary to the Court's *Markman* and *Daubert* Orders, and thus legally incorrect," the Court should enter judgment of infringement as a matter of law. *See* (*id.* at 6.)

For example, ContentGuard asserts that Defendants' argument that the content and the usage rights must travel together was inconsistent with both the Court's *Markman* and *Daubert* orders rejecting the idea of "permanent" attachment. (*Id.* at 6–10.) Similarly, ContentGuard claims that "non-infringement argument Defendants advanced based on the file-moving experiments performed by Dr. Clark[, Defendants' technical expert] should also be rejected" because, "as a matter of law, copying and moving encrypted content is not the same as 'access[ing]' the content." *See* (*id.* at 10–12.) ContentGuard also argues that Defendants' "file-moving defense" violated the Court's *Daubert* order, which prohibited argument that the three integrities must be maintained "at all times." (*Id.* at 11.) Finally, ContentGuard argues that because books and movies are data, rather than software, Defendants' argument that movie and book files are downloaded from the Google Play store without digital certificates and thus their products lack "behavioral integrity" is incorrect. *See* (*id.* at 11–13.)

In the alternative, ContentGuard argues that new trial should be ordered because "Defendants' conduct clearly violated the Court's *Markman* and *Daubert* orders," Defendants unfairly used the Court's *Daubert* order to create alleged inconsistencies in ContentGuard's positions, and "that the Court erred when it permitted Defendants to pursue a 'practicing the prior art' defense before the jury." *(Id.* at 13–18.)

Defendants respond by first arguing that "ContentGuard admits that Defendants never expressly violated the Court's claim construction and *Daubert* orders, but argues that Defendants implicitly argued to the jury that the attachment of usage rights must be permanent." *See* (Dkt. No. 451, "Inf. JMOL Resp.", at 3.) Further, Defendants argue that "Defendants never suggested to the jury that attachment must be permanent," but rather "Defendants' evidence addressed how to apply the Court's constructions to the accused Google Play system." (*Id.* at 3, 5–13) Defendants also argue that "the Court already determined that the application of its 'attached or treated as attached' construction for 'usage rights' was a fact question for the jury, [that] ContentGuard agreed with the Court on this point," that "ContentGuard failed to object on this basis on the record at trial when the complained-of evidence was introduced," and that the Court's construction required that "attachment" be more than mere "association." *See* (*id.* at 3–5, 14–23.)

As to the factual issue of whether the Google Play system uses "usage rights," Defendants argue that they "presented substantial and compelling evidence to the jury." (*Id.* at 4.) For example, Dr. Clark, Defendants' technical expert, testified as follows regarding a test he performed on the accused devices:

> Question: And, sir, can you please describe the demonstration that you did with those phones in order to come to your opinions in this case?
>
> Answer: Sure. So the -- the test that I performed was that I took Device 1, this device (indicating), and I purchased a movie on it as a user. And then on this device, I rented a movie -- the same movie as a different user. And then I downloaded the movie files, and then I deleted the movie file from this file -- from the rental device and transferred the purchased movie to the rental device. And then when I played it on the rental device, it was still treated as a rental, and that told me that the usage rights from the purchased movie were not attached and were not transferred when I copied it over.

(9/21/2015 P.M. Trial Tr. (Clark), Dkt. No. 440, at 78:1–16.) Dr. Clark then testified as follows

about the implication of the test results to an infringement analysis:

> Question: And, sir, what did you conclude from that demonstration?
>
> Answer: That the system could not be understood to be treating the license and the content as attached if I could move them around independently and have different usage conditions associated with each device in the same file.

(*Id.* at 84:18–23.)

In regard to the issue of "physical integrity," Defendants assert that (1) "Dr. Clark presented evidence of testing he performed that showed that the accused Google Play apps did not exhibit physical integrity," including manipulating purchased content on the accused devices, and (2) ContentGuard did not even address Dr. Clark's testimony that Google Play's support of "removable memory prevents the accused devices from maintaining physical security, [and thus] the accused system lacked physical integrity." (Inf. JMOL Resp. at 23–25.) Defendants further assert that "Defendants never contended that physical integrity must be present at all times, and ContentGuard does not point to any such evidence or argument." (*Id.* at 26–28.) Defendants argue that, in fact, ContentGuard's own witnesses' testimony confirmed that Defendants' explanation of the "physical integrity" limitation was correct. (*Id.* at 26–29.)

As to "behavioral integrity," Defendants argue that "Defendants presented both testimony and documentary evidence showing that Google Play digital content (movies, TV, and books) is "software" and that "much of this evidence was from the Stefik patents and Dr. Stefik himself." (*Id.* at 31–34.) Further, Defendants argue "[a]lthough ContentGuard suggested to the jury that the explicit inclusion of digital content files in the definition of 'software' in language in both the patents and the glossary definitions of Dr. Stefik's article was merely 'metaphorical,' the jury was entitled to disbelieve this argument." (*Id.* at 33–34.) Finally, Defendants argue (1) that the Court had previously considered and rejected ContentGuard's argument that Google Play digital

content can be "software" as used in the patents-in-suit and (2) ContentGuard failed to object during trial to this evidence. (*Id.* at 38.)

As to ContentGuard's arguments regarding the alleged "practicing the prior art" defense, Defendants first argue that "ContentGuard points to no argument by Defendants that the accused Google Play system did not infringe because it practiced the prior art." (*Id.* at 39.) Defendants argue that, in fact, they "did not claim that they practiced the prior-art Griswold system, but rather that they practiced a license server system similar to the Griswold system, which Dr. Stefik himself had distinguished from his trusted system with attached usage rights." (*Id.*) For example, Dr. Clark testified as follows regarding the "license server" approach and the Stefik approach:

> Question: Sir, what are you showing in this slide?
>
> Answer: This is actually a ContentGuard presentation in which there appear to be -- distinguishing the trusted system, that is the system where the -- the user devices are trusted from what they show as a conventional DRM design using a license server.
>
> Question: And, sir, which of these ContentGuard documents shows, in your view, the license server approach?
>
> Answer: The one on the left that has the license server in it.
>
> Question: And, sir, what does the slide on the right then show?
>
> Answer: The one on the right shows that the retailer next to the publisher is going to attach rights and conditions, basically he's going to package the digital work, the protected content with those things before it goes to the consumer.
>
> Question: And in which of these is the license attached to the content in your view?
>
> Answer: In the trusted system approach.
>
> Question: And, sir, does one of these slides correspond to the Griswold license server system, in your view?
>
> Answer: Sure. Griswold is kind of a classic license server DRM system.

> Question: And does one of these correspond to Dr. Stefik's approach from his patent, in your view?
>
> Answer: Yes. I mean, you need trusted systems and you need those systems to have attached usage rights that accompany the works, and those are enforced by the devices, which is shown on the right.
>
> Question: And does -- does one of these diagrams correspond to what you understand Google's Google Play and Google Play Books and Movies apps, what their system looks like?
>
> Answer: As -- as we've seen, the Google Play Movies and Books use the license server.

(9/21/2015 P.M. Trial Tr. (Clark), Dkt. No. 440, at 99:15–100:22.) Defendants also argue that they "never argued to the jury that the scope of the patent claims was narrower because of the specification," and "[i]nstead, Defendants argued that Google Play did not meet the Court's construction of the claim terms 'usage rights' and 'trusted' repositories." (Inf. JMOL Resp. at 44–45.)

First, the Court agrees with Defendants that their noninfringement arguments were within the scope of the Court's prior orders. ContentGuard has already raised and the Court has previously addressed the claim construction issue in regard to "usage rights." *See, e.g.*, (9/15/2015 A.M. Trial Tr., Dkt. No. 428, at 6:13–24, 8:19–9:3, 16:16–23.) The Court declines to revisit that ruling. Further, the jury was properly instructed on the law, was free to judge the credibility of witnesses, and weigh all competing evidence. After consideration of the evidence presented at trial, including the tests that Dr. Clark performed on the accused devices, the jury found that Defendants had not infringed the patents-in-suit. *See, e.g.*, (9/21/2015 P.M. Trial Tr. (Clark), Dkt. No. 440, at 78:1–16, 84:18–23.) The jury, acting under a preponderance of the evidence standard as to this disputed factual issue, unanimously reached a reasoned and supportable decision. Accordingly, the Court will not supplant the judgment of the jury. The Court does not find that no reasonable jury could have found that Defendants had not infringed

the patents-in-suit, and thus the Court must deny the motion for judgment as a matter of law on this issue.

Furthermore, the issues raised by ContentGuard do not warrant a new trial. The Court does not find that Defendants presented a "practicing the prior art" defense. Instead, Defendants properly distinguished their system from the systems described in the patents-in-suit. Further, the Court properly and specifically instructed the jury that when answering the question of infringement, they were only to compare the accused products to the patent claims, and were never to compare the accused products to the prior art. *See* (9/23/2015 P.M. Trial Tr., Dkt. No. 445, at 52:10–21.) The Court does not find that a new trial is warranted in this case. Accordingly, ContentGuard's motion for judgment of infringement as a matter of law or, alternatively, a new trial is **DENIED** in all respects.

### B.     Invalidity of the Patents-in-Suit

Defendants request that the Court overturn the jury's verdict and enter judgment that the patents-in-suit are invalid as obvious as a matter of law. (Dkt. No. 397, "Inv. JMOL," at 3.) Defendants argue that "evidence presented at trial compelled a finding that the Asserted Claims of the Stefik Patents were anticipated by the DOD Orange Book, formally titled 'Trusted Computer System Evaluation.' " (*Id.*) In particular, Defendants argue that ContentGuard only "disputed that two elements of the asserted Stefik Patent claims were disclosed in the DOD Orange Book: a 'repository'/'trusted' system and 'usage rights' " and that "[i]n view of the evidence presented, however, no reasonable jury could conclude that the DOD Orange Book did not teach these elements." (*Id.*) Further, Defendants argue that the claims were obvious in view of the DOD Orange Book in combination with Harn or the CNI Proceedings Book or the Kahn and Cerf References. (*Id.* at 12–16.) Additionally, Defendants argue that they are obvious in

view of the Griswold patent publication and the CNI Proceedings. (*Id.* at 16–18.) Defendants also assert that the Meta-Rights patent is invalid in light of the '980 patent. (*Id.* at 19–23.) Finally, Defendants argue that new trial is warranted because of attorney misconduct during closing argument. (*Id.* at 23–26.)

In addressing the challenges to Mr. Ward's testimony on the disclosure of the "trusted," "repository," and "usage rights" limitations in the DOD Orange Book, Defendants argue that Dr. Goodrich only gave conclusory testimony that the DOD Orange Book did not disclose these limitations as taught in the patents-in-suit. (*Id..* at 4–12.) Similarly, Defendants argue that "Dr. Goodrich's wholly conclusory statements [about the DOD Orange Book combinations] could not create a fact issue that the jury could determine against Defendants." (*Id.* at 12–16.) As for ContentGuard's criticism that Griswold "did not teach usage rights because the usage rights are never on the same device as the digital content," Defendants argue that "[a] reasonable jury could not rely on this testimony to find against Defendants on invalidity because the Griswold references clearly disclosed that an alternative, off-line, embodiment was also possible, and that off-line embodiment did not involve datagrams repeatedly checking for authorization." (*Id.* at 16–19.) Additionally, Defendants argue that no reasonable jury could find that the Stefik '980 patent did not disclose the "meta-rights" and "state variable" elements through the '980 patent's discussion of "Next-Set-of-Rights" and "Digital Work State Information." (*Id.* at 21–23) Finally, Defendants argue that certain comments made by ContentGuard's attorney during closing were improper and prejudicial and thus new trial is warranted. (*Id.* at 23–26.)

ContentGuard responds by arguing that "[a]s a threshold matter, JMOL should be denied because Defendants' invalidity expert, Mr. Ward, failed to establish that the [DOD] Orange Book discloses a number of elements of the asserted claims." (Dkt. No. 450, "Inv. JMOL Resp.,"

at 3–5.) Further, ContentGuard argues that "Mr. Ward failed to establish that the [DOD] Orange Book discloses *any* of the three integrities." (*Id.* at 5–9 (emphasis in original)) For example, ContentGuard argues that "Mr. Ward admitted during direct-examination that the [DOD] Orange Book has no explicit disclosure of a *digital certificate*":

> Question: Sir, I don't see the words "digital certificate" anywhere on these pages; is that correct?
>
> Answer: That's correct.

(*Id.* at 5; 9/22/2015 A.M. Tr. (Ward), Dkt. No. 441, at 62:23–25.) ContentGuard also argues that "Mr. Ward provided no testimony and pointed to no disclosure in the [DOD] Orange Book that required the use of *digital certificates*" and that "Mr. Ward failed to establish that any of the prior art references teach *digital certificates* as required by the Court's claim construction." (*Id.* at 6–7, 10–12 (emphasis in original).) Additionally, ContentGuard argues that "Dr. Goodrich explained that the Orange Book discloses that software is installed after a months-long process that involves 'hands-on' involvement with and testing of the source code" and that such a process is "completely different from the digital certificate required by the Court's construction." (*Id.* at 6.) Moreover, ContentGuard argues that Mr. Ward only provided conclusory testimony as to the disclosure of "communications integrity" and "physical integrity." (*Id.* at 7–9.)

In regard to the "usage rights," ContentGuard asserts that Mr. Ward provided merely conclusory testimony that "modes of access" discloses the manner of use necessary for "usage rights," while Dr. Goodrich provided specific testimony explaining why "usage rights" were not taught by the DOD Orange Book. (*Id.* at 9–10.) For example, Dr. Goodrich testified as follows regarding "usage rights":

> Q. And why did you include this phrase for enforcing usage rights after the three integrities?

> A. Because in -- in the Orange Book system, there isn't usage rights the way the Court is construing this term. Instead, they have labels that come out to say, if it's top secret, secret, and so on. And users, then -- not some other system where usage rights would be attached or treated as attached to content, but users themselves just get to say what they can do with it, based on the security clearance they have.

(9/22/2015 A.M. Trial Tr. (Goodrich), Dkt. No. 442, at 94:15–24.) Similarly, in regard to the combination of Griswold and the CNI Proceedings Book, ContentGuard argues that "Mr. Ward failed to establish that the combination of the Griswold Patent Publication and Griswold's chapter in the CNI Proceedings Book disclosed any of the three integrities in support of usage rights." (*Id.* at 12–13.) Further, in regard to the Stefik '980 patent, ContentGuard argues that "Mr. Ward merely asserted in conclusory fashion that the prior art disclosed a 'meta-right' and a 'state variable' without ever stating whether or how the claim limitations were met." (*Id.* at 14.) ContentGuard also notes that "the portion of Mr. Ward's testimony cited by Defendants spans less than three pages, and does not even purport to cover the limitations recited in the asserted Meta-Rights Patent claim." (*Id.*) Finally, in regard to the issue of attorney misconduct, ContentGuard argues that the comments made during closing were proper characterizations of the witness's testimony and that the other alleged misconduct, to the extent it even occurred, related to infringement rather than invalidity. (*Id.* at 16–18.)

After consideration of the evidence presented, including testimony from Mr. Ward admitting that the DOD Orange Book did not use the term "digital certificates," the jury found that Defendants had not proved the patents-in-suit were invalid. *See* (9/22/2015 A.M. Tr. (Ward), Dkt. No. 441, at 62:23–25.) The jury reached a reasoned and supportable decision, and the Court does not find that no reasonable jury could have found that the patents-in-suit are valid. Further, the Court does not find that a new trial is warranted in this case. During oral argument on post-trial motions, Defendants did not deny that any attorney misconduct that may have occurred was

substantially directed toward infringement, an issue on which Defendants prevailed, as opposed to invalidity. Thus, Defendants' motion for judgment as a matter of law or, alternatively, for a new trial as to the validity of the patents-in-suit is **DENIED**.

### C. Motion for Judgment as to Laches and Motion for Bench Trial on Defendants' Inequitable Conduct Defenses

Defendants conditionally request a bench trial on their inequitable conduct defenses. (Dkt. No. 396 at 1.) Additionally, Google requests judgment that ContentGuard's damages are limited due to laches. (Dkt. No. 394 at 1.) Both requests are predicated upon a finding of infringement. However, the jury in this case did not find infringement and awarded no damages. As explained above, the Court declines to overturn the jury's verdict of non-infringement. Resultantly, the Court finds that both of these motions (Dkt. Nos. 396 and 394) should be and hereby are **DENIED AS MOOT**.

### IV. CONCLUSION

For the reasons set forth above, the Court finds that the jury's verdict of both noninfringement and validity should stand. The jury's verdict as a whole is supported by adequate evidence presented at trial, and it should not be disturbed. Accordingly, ContentGuard's Motion for Judgment as a Matter of Law with Respect to the Google-Samsung Trial or, in the Alternative, for a New Trial (Dkt. No. 400; Dkt. No. 1038 in Case No. 2:13-cv-1112) and Defendants' Motion for Judgment of Invalidity as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b), and in the Alternative, Request for a New Trial Pursuant to Federal Rule of Civil Procedure 49 (Dkt. No. 397; Dkt. No. 1034 in Case No. 2:13-cv-1112) are **DENIED**. Further, after reviewing the motions and the arguments contained within, the Court finds that Defendants' Conditional Motion for Bench Trial on Defendants' Inequitable Conduct Defenses (Dkt. No. 396; Dkt. No. 1032 in Case No. 2:13-cv-1112); and Google's Motion for

Judgment of Laches (Dkt. No. 394) are **MOOT** and they should be and are hereby **DENIED** as such.

**So ORDERED and SIGNED this 8th day of July, 2016.**

                                                     RODNEY GILSTRAP
                                                     UNITED STATES DISTRICT JUDGE